UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
AHMED NASIR,

                        Plaintiff,

            -against-                                                    **REPORT AND**
                                                                **RECOMMENDATION**
ABDUL BASHAR KHOKON &                                            23 CV 2128 (DLI) (CLP)
KHOKON CONVENIENCE INC.

                        Defendant.
-----------------------------------------------------------X
**POLLAK**, United States Magistrate Judge:

On March 20, 2023, plaintiff Ahmed Nasir ("Mr. Nasir" or "plaintiff") commenced this action against defendants Abdul Bashar Khokon ("Mr. Khokon") and Khokon Convenience Inc. ("Khokon Convenience") (collectively, the "defendants"), seeking unpaid overtime wages, minimum wages, and spread-of-hours premiums pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C §§ 201 et seq., the New York Labor Law ("NYLL") §§ 190 et seq. and §§ 650 et seq., and related regulations, 12 N.Y. Comp. Codes R. & Regs. ("N.Y.C.R.R.") § 1422.4. (See Compl.[1] ¶ 1). Plaintiff also seeks damages for defendants' failure to provide wage statements and hiring notices, in violation of NYLL §§ 195, 198. (See Compl. ¶¶ 98–105).

Currently before the Court is the plaintiff's motion for default judgment, filed on October 25, 2023 (ECF No. 14), and referred to the undersigned by the district court (the "Motion"). (Electronic Order, dated October 27, 2023). After reviewing plaintiff's submissions, and for the reasons set forth below, the Court respectfully recommends that the district court: (1) grant the Motion with respect to liability and award damages for plaintiff's unpaid overtime wages, minimum wages, and spread-of-hours premiums; (2) deny the Motion with respect to liability for

---

[1] Citations to "Compl." refer to plaintiff's Complaint filed March 20, 2023. (ECF No. 1).

plaintiff's wage statement claims and hiring notice violations; and (3) award plaintiff pre-judgment and post-judgment interest, as well as attorney's fees and costs.

<u>FACTUAL BACKGROUND</u>

Plaintiff is a resident of Kings County, N.Y., and was employed by the defendants as a convenience store employee from approximately October 2011 to on or about March 28, 2021. (Compl. ¶¶ 12, 15).  Khokon Convenience is a domestic corporation organized under New York State Law, with its principal place of business located at 445 Seventh Avenue, Brooklyn, NY, 11215.  (<u>Id.</u> ¶¶ 2, 16).  During the relevant period, Khokon Convenience allegedly had employees engaged in interstate commerce and had an annual gross volume of sales not less than $500,000.  (<u>Id.</u> ¶¶ 46–47).  Mr. Khokon is alleged to be the owner of Khokon Convenience and to be a covered employer under the FLSA and NYLL.  (<u>Id.</u> ¶¶ 26, 43).  Plaintiff alleges that at all times relevant to this action, Mr. Khokon was responsible for hiring and firing the employees. (<u>Id.</u> ¶ 36).  Plaintiff further alleges that at all times relevant, he worked "under the direct supervision of the defendants," and that "[d]efendants maintained control, oversight, and direction over Plaintiff and other employees, including timekeeping, payroll and other employment practices that applied to them."  (<u>Id.</u> ¶¶ 44, 49).

Plaintiff alleges that from October 2011 until March 2021, he worked from 8:00 a.m. until 12:00 midnight, Monday through Sunday, or 16 hours per day, seven days per week, for a total of 112 hours per week.  (<u>Id.</u> ¶ 50).  He claims that during this 16-hour period, defendants did not permit him to take breaks for longer than 20 minutes.  (<u>Id.</u> ¶ 60).  Regarding his wages, plaintiff alleges that he was paid $500.00 per week from the start of the claim period, August 7, 2016, until the end of December 2018, and $650.00 per week from January 2019 until the end of

his employment in March 2021.  (Id. ¶¶ 51–52).[2]  Mr. Nasir claims that he never received

overtime compensation for hours worked over 40 in a workweek, nor did he ever receive spread-

of-hours compensation as required by NYLL §§ 650 et seq., and related regulations, 12

N.Y.C.R.R. § 142-2.4.  (Compl. ¶¶ 72–74, 92, 96).  Further, plaintiff claims that he was paid in

cash and was never provided with a proper wage statement or written notice of his rate of pay, or

other information required by NYLL § 195(1) and (3).  (Id. ¶¶ 61, 99).

In sum, plaintiff brings claims for (1) violations of FLSA and NYLL overtime and

minimum wage requirements (First, Second, Third, and Fourth Causes of Action); and (2)

violations of the NYLL's spread-of-hours premium, wage statement, and hiring notice

requirements (Fifth, Sixth, and Seventh Causes of Action).  Plaintiff's Motion seeks damages in

the form of (1) unpaid overtime compensation; (2) unpaid non-overtime compensation in

accordance with the applicable minimum wage; (3) compensation for failure to provide hiring

notices; (4) compensation for failure to provide wage statements; (5) liquidated damages equal to

the sum of unpaid compensation; (6) pre-judgment and post-judgment interest; and (7) attorney's

fees and costs.  (Id. ¶ 5).

## PROCEDURAL HISTORY

Khokon Convenience was served with the Summons and Complaint on April 6, 2023,

and Mr. Khokon was served on May 3, 2023.  (ECF Nos. 6, 8).  Defendants did not answer or

---

[2] The Court uses August 7, 2016, as the start of the claim period.  March 20, 2017, six years prior to March 20, 2023, would normally have marked the start of the claim period pursuant to NYLL § 663(3).  However, as plaintiff notes, Governor Cuomo's Executive Order No. 202.8 extended the claim period by 228 days.  (ECF No. 29 at 1).  As other courts have noted, "[p]er the Executive Order, causes of action that arose under New York law that accrued before or during the tolled period–between March 2020 and November 2020–would not count towards the statute of limitations period for that particular claim."  Mineo v. Town Hempstead, No. 22 CV 4092, 2024 WL 1077874, at *12 (E.D.N.Y. Feb. 23, 2024); Garcia v. Three Decker Restaurant, Ltd. No. 22 CV 1387, 2024 WL 1311897, at *6–7 (S.D.N.Y. Mar. 27, 2024).

otherwise respond to the Complaint, and on June 23, 2023, the Clerk of Court entered a default against defendants. (ECF No. 11). Plaintiff thereafter filed his Motion for Default Judgment.

In support of his Motion, plaintiff filed his Memorandum of Law ("Pl's Mem.") (ECF No. 17), an affidavit from Mr. Nasir ("Nasir Aff.") (ECF No. 15), a declaration by plaintiff's counsel, Mr. Jerry Boies ("Boies Decl.") (ECF No. 16), and a chart of calculated damages (ECF No. 16-1). In support of his counsel's application for attorney's fees and costs, plaintiff also attached a copy of Mr. Boies' billing records (ECF No. 16-2), and receipts showing the expenses for which Mr. Boies seeks reimbursement (ECF No. 16-3).

The Honorable Dora Lizette Irizarry, United States District Judge, referred the Motion to the undersigned. (Electronic Order, dated October 27, 2023). On January 2, 2024, this Court issued an Order setting an inquest hearing for March 14, 2024, and instructed defendants to submit any papers in response to plaintiff's motion for default judgment on or before February 1, 2024. (ECF No. 18). Plaintiff served a copy of that Order on defendants on January 2, 2024 (ECF No. 19). On March 13, 2024, due to unforeseen circumstances, the Court issued an Order adjourning the inquest hearing to April 2, 2024. (ECF No. 20). Plaintiff served a copy of that Order on defendants on March 14, 2024. Defendants failed to file any papers by the stated deadline and failed to appear at the inquest hearing. (See Minute Entry, dated April 4, 2024).

On June 13, 2024, this Court determined that additional information was necessary before plaintiff's Motion for default judgment could be resolved, and it issued an Order setting a supplemental inquest hearing. (ECF No. 22). Plaintiff served a copy of that Order on defendants on June 18, 2024. (ECF No. 25). Defendants again failed to appear at the hearing on June 27, 2024. (Minute Entry, dated June 27, 2024).

4

During the hearing, plaintiff testified before the Court as to his hours worked and wages received.  (See Hr'g Tr.[3]).  The Court thereafter directed plaintiff to file a letter or any supplemental motion papers addressing several discrepancies raised in the inquest hearing. (Minute Entry, dated June 27, 2024).  On July 12, 2024, plaintiff filed a letter with the Court requesting that the Court issue its Report and Recommendation on the pending motion for default judgment. (ECF No. 28).  The letter did not address (1) plaintiff's claims as to any concrete injury he suffered due to the failure of defendants to provide the required hiring notice and wage statements or (2) plaintiff's allegations that he was required to purchase certain goods for Khokon Convenience with his own money—a claim that he raised during the supplemental inquest hearing but that was not alleged in his original Complaint.[4]  (ECF No. 28).  Plaintiff also filed a separate letter addressing several discrepancies in the papers that had been filed in support of plaintiff's Motion for default judgment.  (ECF No. 29).

## DEFAULT JUDGMENT

The Court first addresses the question of whether default judgment should enter against the defendants as to some or all of plaintiff's claims.   This analysis requires the Court to determine whether the allegations contained in the Complaint, taken as true for purposes of a motion for default judgment, establish liability on the part of the defendants for the conduct complained of in the Complaint.  As described in detail below, the Court concludes that default judgment is appropriate as to plaintiff's minimum wage, unpaid overtime, and spread-of-hours compensation claims, but not as to plaintiff's wage statement or hiring notice claims.

---

[3] Citations to "Hr'g Tr." refer to the Transcript of Civil Cause for Inquest Hearing held June 27, 2024, which was filed on July 1, 2024.  (ECF No. 27).

[4] Plaintiff did not allege that he was required to purchase certain goods for Khokon Convenience with his own money in the Complaint, nor has he submitted any supporting documentation showing the amounts expended. Therefore, the Court has not recommended damages for this claim.

I.    <u>Legal Standard</u>

Rule 55(a) of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  Rule 55 sets forth a two-part procedure for entering a default judgment.  First, the Clerk of Court enters a default by noting the defaulting party's failure to respond or appear.  <u>Id.</u>  Second, if the defaulting party then fails to vacate the entry of default pursuant to Rule 55(c), the appearing party may seek a default judgment to establish liability and, if proven, damages.  Fed R. Civ. P. 55(b).

In determining whether a default judgment should be entered, the Second Circuit has cautioned that a default judgment is an "extreme sanction" that "must remain a weapon of last, rather than first, resort."  <u>Meehan v. Snow</u>, 652 F.2d 274, 277 (2d Cir. 1981); <u>see also</u> <u>Sheet Metal, Air, Rail & Transp. Workers Loc. Union No. 127 v. Frank Torrone & Sons, Inc.</u>, No. 14 CV 2224, 2018 WL 4771897, at *4 (E.D.N.Y. Oct. 3, 2018), <u>adopting report and recommendation</u>, 2018 WL 6161655 (E.D.N.Y. Sept. 4, 2018).  While the Second Circuit has recognized the pressure on district courts "to dispose of cases that . . . delay and clog [their] calendar[s]" due to the litigants' "disregard of the rules," the Circuit instructs district courts to "maintain a balance between clearing [their] calendar[s] and affording litigants a reasonable chance to be heard."  <u>Enron Oil Corp. v. Diakuhara</u>, 10 F.3d 90, 95–96 (2d Cir. 1993); <u>see also</u> <u>Jeremiah v. 5 Towns Jewish Times, Inc.</u>, No. 22 CV 5942, 2023 WL 6593997, at *2 (E.D.N.Y. Aug. 9, 2023), <u>report and recommendation adopted</u>, 2023 WL 5703698 (E.D.N.Y. Sept. 5, 2023).  Thus, in light of the "oft-stated preference for resolving disputes on the merits," defaults are "generally disfavored" and "doubt[s] should be resolved in favor of the defaulting party."  <u>Enron Oil Corp. v. Diakuhara</u>, 10 F.3d at 95–96; <u>see also</u> <u>Erwin DeMarino Trucking Co. v.</u>

Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (stating that courts must "supervise default judgments with extreme care to avoid miscarriages of justice"). Furthermore, "[Rule 55(b)] states that a judgment by default 'may' be entered under specified circumstances, not that it must." Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. at 162. Accordingly, a plaintiff is not entitled to a default judgment as a matter of right simply because the defendant is in default. See, e.g., id.

Courts have significant discretion and may consider a number of factors in deciding whether to grant a default judgment, including:

1) Whether the claims were adequately pleaded in the Complaint, thereby placing the defendant on notice, see Fed. R. Civ. P. 54(c) (stating: "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings");

2) "[W]hether the grounds for default are clearly established," Jeremiah v. 5 Towns Jewish Times, Inc., 2023 WL 6593997, at *2 (quoting Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. 1992)); and

3) "[T]he amount of money potentially involved. The more money involved, the less justification for entering the default judgment." Id. (internal citations omitted).

When a defendant defaults, the defendant is typically deemed to have admitted every well-pleaded allegation of the complaint, "except those relating to damages." Jeremiah v. 5 Towns Jewish Times, Inc., 2023 WL 6593997, at *3 (quoting Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)). However, "a district court has discretion . . . to require proof of necessary facts and need not agree that the alleged facts constitute a valid cause of action." Au Bon Pain Corp. v. Artect, Inc., 653 F.2d at 65. In either event, the Court must review the allegations in the Complaint and/or factual averments to determine if the elements of each claim have been adequately pleaded. See id.; Rolls-Royce PLC v. Rolls-Royce USA, Inc., 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010) (adopting report and recommendation and explaining that "it

7

remains the court's responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief").  Moreover, the Court may, in deciding whether to grant default judgment, consider whether there are unresolved questions regarding material issues of fact as to liability, whether plaintiff has been substantially prejudiced by the delay involved, and how harsh an effect a default judgment might have on the defendant.  See 10A Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. § 2685 (4th ed. 2023) (discussing the aforementioned factors).

II.  Default

Before turning to the question of whether plaintiff has adequately pleaded some or all of his claims against the defendants such that default judgment may properly be entered against them, the Court addresses whether defendants in fact defaulted.

Defendants were properly served with the summons and complaint on April 6, 2023, and again on May 4, 2023, in a manner consistent with Rule 55.2(c) of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Civil Rules").  (See Pl.'s Mem. at 1; see also ECF Nos. 5–8 (proof of service via authorized agent)). Despite the numerous opportunities afforded to defendants, they have neither contested default nor appeared in this action.  Indeed, defendants failed to respond to the Court's inquest order or appear at the inquest hearing, both of which afforded them an additional opportunity to challenge the Clerk's entry of default and/or contest the appropriate measure of damages.  (See ECF Nos. 20–21; Minute Entry dated April 4, 2024).  Defendants also failed to respond to the Court's supplemental inquest order or appear at the supplemental hearing.  (ECF No. 27; Minute Entry dated June 27, 2024; see also Hr'g Tr.).  It is therefore beyond dispute that defendants are in default.  See Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *2 (holding that defendant's default was "crystal clear" when it failed to oppose the plaintiff's motion for a default judgment).

III.    Adequacy of Pleadings

Before recommending that the district court enter default judgment as to some or all of plaintiff's claims, the Court is obligated to review the allegations in the Complaint and confirm that each of the elements of plaintiff's claims have been adequately pleaded.  See Rolls-Royce PLC v. Rolls-Royce USA, Inc., 688 F. Supp. 2d at 153.  In doing so, the Court accepts plaintiff's factual allegations as true.  See id.; Jeremiah v. 5 Towns Jewish Times, Inc., 2023 WL 6593997, at *3.

A.    FLSA Minimum Wage Claims

Plaintiff alleges that the defendants neglected "to pay minimum wage for all hours worked," in violation of the FLSA.  (Compl. ¶ 78).  The FLSA requires "[e]very employer" to "pay to each of his [covered] employees . . . wages at" a specified rate.  29 U.S.C. § 206(a).   To establish a claim under the FLSA, a plaintiff must prove four elements:

1)  That the defendant failed to pay the mandated minimum wage;

2)  That the defendant is a covered employer under either the "individual coverage" theory or the "enterprise coverage" theory;

3)  That plaintiff is an "employee" within the meaning of the FLSA; and

4)  That the employment relationship is not one that is exempted from the FLSA.

See id.; Rosenbaum v. Meir, No. 20 CV 4520, 2023 WL 2305960, at *4 (E.D.N.Y. Mar. 1, 2023); Edwards v. Community Enters., Inc., 251 F. Supp. 2d 1089, 1098 (D. Conn. 2003) (citing Tony & Susan Alamo Found. v. Secretary of Lab., 471 U.S. 290, 295 (1985)).  Accepting the allegations in the Complaint as true, the Court concludes that plaintiff has satisfied each of those elements.

1. <u>Failure to Pay Minimum Wage</u>

Plaintiff alleges that defendants failed to pay him the applicable federal minimum wage during the entire period of his employment.  In all relevant periods, the federal minimum wage was $7.25 per hour.  <u>See</u> 29 U.S.C. § 206(a)(1).  The statute of limitations for "willful" violations of the FLSA is three years. 29 U.S.C. § 255(a).[5]  Plaintiff alleges that at all times during the three-year statute of limitations, he worked for 112 hours per week.  (Compl. ¶ 50). As noted earlier, plaintiff alleges that at all times within this three-year period during which he was employed by defendants, he was paid $650.00 per week.[6]  (<u>Id.</u> ¶ 52).  To determine whether plaintiff has adequately pleaded FLSA minimum wage claims, the Court must determine his regular hourly rate of pay by dividing the total weekly pay by the total number of hours worked. <u>See</u> <u>Jose Barrera Sanchez v. Ms. Wine Shop Inc.</u>, 643 F. Supp. 3d 355, 375–376 (E.D.N.Y. Nov. 30, 2022) (<u>citing Perez Campos v. Quentin Mkt. Corp.</u>, No. 16 CV 05303, 2018 WL 9945754, at *4 (E.D.N.Y. Oct. 7, 2018)).[7]  Accordingly, plaintiff's hourly wage from the start of the three-year statutory period until the end of his employment in March 2021 was $5.80.  This hourly

---

[5] The FLSA generally provides a two-year statute of limitations, but an extra year is provided for "willful" violations, which includes defendants who are in default.  <u>See Jose Barrera Sanchez v. Ms. Wine Shop Inc.</u>, 643 F. Supp. 3d 355, 369 (E.D.N.Y. Nov. 30, 2022).

[6] Plaintiff filed his Complaint on March 20, 2023, indicating that his statutory period begins on March 20, 2020.  Plaintiff claimed that from January 2019, until the end of his employment March 2021, he was paid $650.00 per week.  (Compl. ¶ 52).

[7] New York Hospitality Industry Wage Order states that in the "hospitality industry," which includes "restaurant[s]" and "hotel[s]," an employee's regular rate of pay is calculated by dividing an employee's weekly pay by 40, regardless of the total number of hours worked.  N.Y.C.C.R.R. § 146-3.5.  The regulation defines a "restaurant" as "any eating or drinking place that prepares and offers food or beverage for human consumption either on any of its premises or by such service as catering, banquet, box lunch, curb service or counter service to the public, employees, or to members or guests of members…"  <u>Id.</u> § 146-3.1(a), (b).  However, as other Courts in this district have held, convenience store workers generally do not qualify as "restaurant" workers unless the plaintiff specifically argues that the definition of "restaurant" under New York Hospitality regulations applies to plaintiff's work.  <u>Perez Campos v. Quentin Mkt. Corp.</u>, 2018 WL 9945754, at *4 (finding that "[p]laintiffs have offered no evidence that Quentin Market is a restaurant for the purposes of this regulation other than the vague allegation that Gonzales was a 'deli worker.'  Such non-existent or vague allegations are insufficient to establish that Plaintiffs are hospitality industry employees").  Here, given that plaintiff has not offered any evidence that Khokon Convenience qualifies as a "restaurant" under New York Hospitality Industry regulations, the Court calculates plaintiff's regular rate of pay using the total number of hours worked.

10

wage fails to meet the federal requirement of $7.25 per hour. Accepting plaintiff's allegations as true, the Court finds that plaintiff has adequately pleaded that, at all times within the FLSA's three-year statute of limitations, plaintiff was not properly compensated in accordance with the federal minimum wage.

### 2.   Covered Employer

For purposes of determining employer status under the "Enterprise Coverage" theory, a defendant is an "[e]nterprise engaged in commerce or in the production of goods for commerce" if the defendant:

> has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and . . . whose annual gross volume of sales made or business done is not less than $500,000.

29 U.S.C. § 203(s)(1)(A).

"[L]iability under the FLSA extends to any 'employer'" once the plaintiff has established individual or enterprise coverage. Gordon v. General Prop. Mgmt. Assocs., Inc., 496 F. Supp. 3d 830, 836 (S.D.N.Y. 2020) (quoting 29 U.S.C. § 216(b)). The FLSA defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." Id. § 203(d).[8] "[W]hether there is an employer-employee relationship between an individual defendant and an FLSA plaintiff" under that definition of employer depends, at least in substantial part, upon "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment

---

[8] "Person" is defined as "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons." 29 U.S.C. § 203(a).

records." <u>Fermin v. Las Delicias Peruanas Rest., Inc.</u>, 93 F. Supp. 3d 19, 35 (E.D.N.Y. 2015)

(quoting <u>Carter v. Dutchess Community College</u>, 735 F.2d 8, 12 (2d Cir. 1984)).

Plaintiff alleges that from the beginning of the FLSA's three-year statutory period, March

20, 2020, through approximately March 28, 2021, he worked at Khokon Convenience.[9]  (Compl.

¶ 1).  He also alleges that Khokon Convenience was and continues to be a covered employer as

defined under the FLSA; that it engaged in interstate commerce; and that it had an annual gross

volume of sales in excess of $500,000.  (<u>Id.</u> ¶¶ 20, 23, 24).  In support of that allegation, plaintiff

states that "[d]efendants employed Plaintiff and regularly engaged in commerce or in the

production of goods for commerce or in handling, selling, or otherwise working on goods and

materials which have moved in or been produced for commerce[.]"  (<u>Id.</u> ¶ 46).  For purposes of a

default judgment motion, that allegation is sufficient to establish that Khokon Convenience is a

covered employer under the enterprise coverage theory.  <u>See</u> <u>Fermin v. Las Delicias Peruanas</u>

<u>Rest., Inc.</u>, 93 F. Supp. 3d at 33 (stating that it was "reasonable to infer" that a "Peruvian

restaurant with an eat-in dining area and over $500,000.00 in annual sales" utilized a "wide

variety of materials to operate," at least some of which were likely "moved or were produced in

interstate commerce").

With respect to Mr. Khokon's employer status, plaintiff alleges that at all times relevant

to this action, Mr. Khokon was the owner of the store, was responsible for hiring and firing

employees, and supervised and directed employees.  (Compl. ¶¶ 26, 35, 36).  Plaintiff also

alleges that within the same period, Mr. Khokon was "the finance controller" of the store, which

involved making decisions regarding payroll and compensation practices.  (<u>Id.</u> ¶¶ 27, 33, 41).  In

---

[9] As noted earlier, plaintiff allegedly began working for Khokon Convenience in 2011.  (Compl. ¶ 1).
However, for purposes of establishing liability under plaintiff's FLSA claims, the Court considers only his
employment within the FLSA's three-year statute of limitations.

the context of this Motion, in which defendants have elected not to challenge plaintiff's claims, the Court accepts these uncontested allegations as true.  Thus, the Court finds that plaintiff has adequately pleaded that Khokon Convenience is an "enterprise engaged in commerce or in the production of goods for commerce," and that Mr. Khokon is also an "employer" as defined by the FLSA.

3.    Non-exempt Employee Status

Finally, the Court turns to the third and fourth elements of an FLSA minimum wage claim: whether plaintiff is an employee for purposes of the FLSA, and whether his employment relationship is exempted from the FLSA.  The FLSA defines an "employee" as "any individual employed by an employer."  29 U.S.C. § 203(e)(1); see also Edwards v. Community Enters., Inc., 251 F. Supp. 2d at 1098.  To "employ" means "to suffer or permit to work."  29 U.S.C. § 203(g).  The FLSA covers both "employees who in any workweek [are] engaged in commerce or in the production of goods for commerce" and those persons who are "employed in an enterprise engaged in commerce or in the production of goods for commerce."  29 U.S.C. § 206(a).

The Complaint alleges that plaintiff was employed by defendants, who, as noted above, qualify as "employers" within the meaning of the FLSA.  Moreover, there is nothing to suggest any basis for exempting the employment relationship at issue from the FLSA's provisions.  See 29 U.S.C. § 213(a) (setting forth the exemptions from the minimum wage requirements).  The Court therefore concludes that, at least for purposes of a default judgment motion, plaintiff has adequately pleaded the third and fourth elements of an FLSA minimum wage claim.

B.    FLSA Overtime Claims

Plaintiff also alleges that defendants failed to pay him time and a half for the hours worked over 40 in a workweek. The FLSA provides that "no employer shall employ any of his [covered] employees . . . for a workweek longer than forty hours unless such employee receives

compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). Overtime is calculated at a rate of one and one-half times the employee's regular hourly pay for work performed in excess of 40 hours per week. Id.

To establish an overtime claim under the FLSA, a plaintiff must prove four elements:

1) That the defendant failed to pay the mandated overtime wage;

2) That the defendant is a covered employer under either the "individual coverage" theory or the "enterprise coverage" theory;

3) That plaintiff is an "employee" within the meaning of the FLSA; and

4) That the employment relationship is not one that is exempted from the FLSA.

See id.; Rosenbaum v. Meir, 2023 WL 2305960, at *4; Edwards v. Community Enters., Inc., 251 F. Supp. 2d at 1098 (citing Tony & Susan Alamo Found. v. Secretary of Lab., 471 U.S. at 295). As noted earlier, plaintiff claims that during his period of employment with defendants, he worked for 112 hours total, or 72 hours over 40 hours per week. (Compl. ¶ 50). The federal minimum wage during the relevant time period was $7.25 per hour. See 29 U.S.C. § 206(a)(1). In order satisfy the overtime payment requirements, defendants would have had to pay plaintiff $10.88 (1.5 x $7.25) for each of the 72 hours per week he alleges to have worked overtime. This amounts to an additional $783.00 total per week in overtime payments.

Plaintiff alleges that at all times within the three-year statute of limitations during which he was employed by Khokon Convenience, he was paid $650.00 per week. (Compl. ¶ 52). As calculated above, plaintiff's regular rate of pay based on his $650.00 per week salary for 112 hours was $5.80. Given that plaintiff was not even compensated in accordance with FLSA

14

minimum wage requirements, plaintiff was also not adequately compensated for his overtime hours during the FLSA's three-year statutory period.

The remaining three elements that a plaintiff must prove to establish a claim under the FLSA overtime wage provisions are consistent with those required to establish a claim under FLSA minimum wage requirements. The Court has already determined that the plaintiff's pleadings, taken as true for purposes of this default, satisfied these elements. Therefore, the Court concludes that plaintiff has adequately pleaded all four elements of an FLSA unpaid overtime wage claim.

    C.    <u>NYLL Overtime, Minimum Wage, and Spread-of-Hours Claims</u>

        1.    <u>Underpayments</u>

Plaintiff also alleges that during the period from 2016 through 2021, defendants violated the NYLL's overtime wage, minimum wage, and spread-of-hours provisions.[10] Like the FLSA, the NYLL establishes certain minimum wage rates that have increased over set periods of time. <u>See</u> 12 N.Y.C.R.R. § 146-1.2. As of December 31, 2016, the New York statute and regulations set minimum wage rates for hours worked in New York City depending in part upon whether the employee works for a "[l]arge employer[]" of eleven or more employees, or a "[s]mall employer[]" of ten or less employees. NYLL § 652(1)(a)(i)–(ii); <u>see also</u> 12 N.Y.C.R.R. § 146-1.2(a)(1)(a)(b). The minimum wage for small employers in 2016, at the start of plaintiff's six-year statutory period under the NYLL, was $9.00 per hour. In 2017, the minimum wage was $10.50, and in 2018 it was $12.50. In 2019 the minimum wage rate was $13.50. From 2020 until the end of plaintiff's employment with defendants, the minimum wage in New York City

---

[10] Unlike the FLSA which has a maximum three-year statute of limitations, the NYLL has a six-year limitations period, which for plaintiff runs from August 7, 2016, through the end of plaintiff's employment with defendants, on March 28, 2021. (<u>See</u> footnote 2; ECF No. 29 at 1). NYLL § 663(3).

15

was $15.00 per hour.  As Mr. Nasir noted in his testimony during the supplemental inquest hearing held before this Court on June 27, 2024, two people worked at Khokon Convenience: the employer-defendant, Mr. Khokon, and plaintiff, Mr. Nasir.  (Hr'g Tr. at 12:12–15).  Accordingly, Khokon Convenience qualifies as a "small employer" under the NYLL.  Therefore, plaintiff's hourly wages, of $4.46 from the start of the claim period in 2016 until December 2018, and of $5.80 from January 2019 until March 2021, were in violation of New York City minimum wage requirements.

 With respect to overtime wage requirements, like the FLSA, the NYLL requires that employees be compensated at an overtime rate of one and one-half times their regular hourly pay for time worked in excess of 40 hours in a week.  See NYLL § 663; 12 N.Y.C.R.R. § 1461.4.  The elements of an NYLL overtime wage claim largely mirror those of an FLSA overtime wage claim.

Given that the minimum wage rate under the NYLL was consistently higher that the applicable minimum wage rate under the FLSA, the overtime rate under the NYLL was also higher than the applicable overtime rate under the FLSA.  In 2016, the overtime rate under the NYLL was $13.50 ($9.00 x 1.5) per hour.  In 2017, the overtime rate was $15.75 ($10.50 x 1.5) per hour.  In 2018, the overtime rate was $18.75 ($12.50 x 1.5) per hour.  From 2019 through 2020, the overtime rate was $20.25 ($13.50 x 1.5).  From 2020 through the end of the claim period in 2021, the overtime rate was $22.50 ($15.00 x 1.5) per hour.  Therefore, plaintiff's hourly wages of $4.46 from 2016 through 2018, and $5.80 from 2019 through 2021, did not satisfy overtime pay requirements under the NYLL.  See NYLL § 652.

### 2.    Coverage

Turning to the other elements required to state a minimum wage or overtime claim under the NYLL, the plaintiff must prove that he or she is an "employee" entitled to NYLL's

protections and that the defendant is an "employer" as defined by the statute. See Lauria v. Heffernan, 607 F. Supp. 2d 403, 407–09 (E.D.N.Y. 2009).  The NYLL's definition of "employer" mirrors that of the FLSA, with the exception that the NYLL has no gross sales or interstate commerce requirement.  See NYLL § 651(6); Singh v. Mowla, No. 19 CV 4687, 2022 WL 17820099, at *8, n.8 (E.D.N.Y. Sept. 30, 2022).  Similarly, an "employee" is simply defined, in part, as "any individual employed or permitted to work by an employer in any occupation."  NYLL § 651(5).

For the same reasons noted above with respect to plaintiff's FLSA claims, the Court concludes that (1) plaintiff has adequately alleged claims for unpaid minimum wages; (2) plaintiff has adequately alleged claims for unpaid overtime compensation; (3) plaintiff fits within the definition of "employee;" and (4) defendants satisfy the definition of "employer" under the NYLL.  Furthermore, there does not appear to be any exception to the definition of "employee" that applies in this case.

### 3.     Spread of Hours

The NYLL also provides that covered employees are entitled to an additional hour's pay at the basic minimum hourly wage rate for any day worked during which the "spread of hours"— *i.e.*, "the interval between the beginning and end of an employee's workday,"—exceeds 10 hours. 12 N.Y.C.R.R. §§ 142-2.18, 142-2.4.

Once coverage under the NYLL has been established, as here, a plaintiff asserting a spread-of-hours claim need only show that he worked in excess of ten hours per day for one or more days without adequate compensation.  See Doo Nam Yang v. ACBL Corp., 427 F. Supp. 2d 327, 339 (S.D.N.Y. 2005).  In his Complaint, plaintiff claims that he regularly worked for 16 hours each day, and that "he did not receive spread-of-hours premiums equal to an additional hour at the applicable minimum wage for such days."  (Compl. ¶ 62).  In the context of this

Motion, in which defendants have elected not to challenge plaintiff's claims, the Court accepts these uncontested allegations as true. Thus, the Court concludes that, at least for purposes of a default judgment motion, plaintiff has adequately pleaded the requirements of a spread-of-hours claim under the NYLL.

      D.      <u>NYLL Wage Statement and Notice Claims</u>

Under the NYLL's notice and wage statement provisions—known collectively as the "Wage Theft Prevention Act" or "WTPA"—employers are required to give each employee a notice of their rate of pay at the time of hiring, and a wage statement listing specific information with each paycheck. NYLL §§ 195(1)(a), (3). The notice must contain the rate or rates of pay, whether the employee was to be paid by the hour, shift, day, or week, any allowances claimed as part of the minimum wage, the regular pay day, the name of the employer, the physical address of the employer's main office, and the employer's telephone number in both English and the employee's primary language, if different from English. <u>Id.</u> § 195(1)(a). The wage statement must include "the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions;" and certain allowances. <u>Id.</u> § 195(3).

A plaintiff may recover $50 for each workday during which the employer failed to provide the required notice, not to exceed $5,000. <u>Id.</u> § 198(1-b); <u>see also</u> <u>Cabrera v. 1560 Chirp Corp.</u>, No. 15 CV 8194, 2017 WL 1289349, at *7 (S.D.N.Y. Mar. 6, 2017) (describing the WTPA's amendments to NYLL § 198(1-b)). If an employer fails to provide an employee with a pay stub, or with a pay stub containing the necessary wage statement, the employee may recover $250 for each workday for which the employer failed to provide the statement, up to a total of

$5,000.  Id. § 198(1-d); see also Cabrera v. 1560 Chirp Corp., 2017 WL 1289349, at *6

(describing the WTPA's amendments to NYLL § 198(1-d)).

Recently, the Supreme Court explained in TransUnion LLC v. Ramirez, 594 U.S. 413,

426 (2021), that "Congress's creation of a statutory prohibition or obligation and a cause of

action does not relieve courts of their responsibility to independently decide whether a plaintiff

has suffered a concrete harm under Article III."  The Supreme Court clarified that "[o]nly those

plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that

private defendant over that violation in federal court."  Id. at 427.  Courts in this Circuit,

applying TransUnion LLC v. Ramirez to the wage statement and wage notice provisions of the

NYLL, have since required plaintiffs to identify the harm caused to them by these violations,

concluding that a statutory violation alone is insufficient.  Specifically, plaintiffs have been

required to allege and ultimately prove that they suffered a specific injury as a result of

defendants' noncompliance with the notice and wage statement provisions.  Compare Stih v.

Rockaway Farmers Market, Inc., No. 22 CV 3228, 2023 WL 2760492, at *7 (E.D.N.Y. Apr. 3,

2023) (finding plaintiff pleaded a sufficient injury flowing from defendants' alleged violations of

the NYLL wage statement and notice provisions where plaintiff alleged that the noncompliance

"caused plaintiff to fail to realize that defendants were deducting certain benefits from his wages,

resulting in his underpayment"), with Francisco v. NY Tex. Care, Inc., No. 19 CV 1649, 2022

WL 900603, at *7 (E.D.N.Y. Mar. 28, 2022) (declining to certify a class action based on the

defendants' alleged improper wage statement and notice policies because the plaintiff did not

demonstrate, either in the pleadings or the record, a tangible injury or close parallel to a traditional cause of action sufficient to establish standing to bring those claims).[11]

In the instant case, plaintiff merely alleged that he was not provided with the requisite notice and wage statements. (Compl. ¶¶ 99, 104). He has not alleged any specific harm which flowed from defendants' noncompliance with the NYLL provisions, and he therefore has not demonstrated his standing to bring these claims. In the absence of allegations that, if true, would establish such standing, the Court cannot conclude that plaintiff has adequately pleaded his wage statement and hiring notice claims.

After the Court informed plaintiff of this standing issue during the supplemental inquest hearing, plaintiff confirmed in his July 12, 2024, letter that he did not wish to address the Court's inquiry as to whether plaintiff "'suffered a concrete harm under Article III' due to the employer's failure to provide Plaintiff with notice and wage statements pursuant to NYLL § 195(1)(a), (3)." (ECF No. 28). Accordingly, the Court respectfully recommends that the district court deny plaintiff's Motion with respect to those claims, and that they be dismissed for lack of standing.

## DAMAGES

Having found that plaintiff is entitled to default judgment as to at least some of his claims, the Court now considers his request for damages.[12] Plaintiff calculates that, in total, he is

---

[11] See also Ramirez v. Urion Constr. LLC, No. 22 CV 3342, 2023 WL 3570347, at *5 (S.D.N.Y. Apr. 28, 2023) (declining to award statutory damages and dismissing NYLL wage statement and notice claims on motion for default judgment due to lack of standing for failing to allege a concrete, fairly traceable injury), report and recommendation adopted, 2023 WL 3570639 (S.D.N.Y. May 19, 2023); Belliard v. Tarnovsky, No. 20 CV 1055, 2023 WL 3004963, at *6 (S.D.N.Y. Mar. 6, 2023) (declining to award a plaintiff statutory damages under the NYLL despite defendant's default because plaintiff "merely state[d] that he was not provided the new hire notice or wage statements" and failed to "assert any other facts describing the injury in fact caused by not receiving these documents"), report and recommendation adopted, 2023 WL 3304723 (S.D.N.Y. May 8, 2023); Neor v. Acacia Network, Inc., No. 22 CV 4814, 2023 WL 1797267, at *4 (S.D.N.Y. Feb. 7, 2023) (dismissing a complaint's claims under the NYLL wage statement and notice provisions for lack of standing where the complaint did not "allege any harm stemming from a lack of accurate wage notices or statements").

[12] Since the Court concludes that plaintiff has not adequately stated an injury in connection with his WTPA claims, the Court does not consider his request for damages with respect to those two claims.

entitled to an award of $681,181.00 in unpaid wages, WTPA violations, and liquidated damages, as well as pre-judgment interest calculated "at a rate of 9% per year from February 13, 2019," post-judgment interest, plus $12,337.00 in attorney's fees, and "further relief as this Court deems just and proper." (Pl.'s Mem. at 16–18; see also Compl. ¶¶ A–M). However, for the reasons set forth below, the Court concludes that plaintiff should be awarded of $667,464.20 in damages, plus $12,337.00 in attorney's fees and costs, and $82.29 per day in pre-judgment interest, starting on November 28, 2019, until the date of judgment, along with post-judgment interest to be determined at a later date.

I.    Legal Standard

Once the court determines that default judgment should enter, the plaintiff must still establish his entitlement to the damages sought. See Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974) (holding that "[w]hile a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation"); Wing v. East River Chinese Rest., 884 F. Supp. 663, 669 (E.D.N.Y. 1995) (explaining that "[a]lthough the default establishes a defendant's liability, unless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded"). Unlike with the question of liability, a defaulting defendant is not deemed to have admitted all well-pleaded allegations concerning damages. See Jeremiah v. 5 Towns Jewish Times, Inc., 2023 WL 6593997, at *3.

While "the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing." United States v. Richardson, No. 17 CV 2982, 2018 WL 4138934, at *3 (E.D.N.Y. Feb. 13, 2018) (quoting Fustok v. Conticommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988), aff'd, 873 F.2d 38 (2d Cir. 1989)), report and recommendation adopted, 2018 WL 4119518 (E.D.N.Y. Aug. 29,

21

2018).  This Court held an inquest hearing on April 2, 2024 (Minute Entry, dated April 4, 2024), and a supplemental inquest hearing on June 27, 2024 (Minute Entry, dated June 27, 2024; see also Hr'g Tr.), and bases its analysis on the documents submitted and on plaintiff's testimony.

II.    Analysis

A.    FLSA and NYLL Overtime, Minimum Wage, and Spread of Hours Claims

1.    Overtime, Minimum Wage, and Spread of Hours Standards

In connection with his claims under the FLSA and NYLL, plaintiff seeks damages in the form of unpaid overtime, unpaid minimum wage, and unpaid spread-of-hours compensation. According to plaintiff's Declaration, he started working at Khokon Convenience in October 2011.  (Nasir Decl. ¶ 2).  He worked for 16 hours per day, seven days per week, and received $500.00 per week until December 2018.  (Id. ¶¶ 3–4).  He received $650.00 per week from January 2019 until the end of his employment in March 2021, and he worked roughly the same number of hours during that period.  (Id. ¶ 3, 5).  Mr. Nasir alleges that he was paid solely in cash, never received a paycheck or wage notice, and was never required to clock in or out.  (Id. ¶¶ 7–8, 10).

Beyond his self-created timesheets (see ECF No. 29, Ex. A[13]), plaintiff has not provided records to verify these claims.  Under the FLSA, an employee-plaintiff generally "has the burden of proving that he performed work for which he was not properly compensated."  Santillan v. Henao, 822 F. Supp. 2d 284, 293-94 (E.D.N.Y. 2011) (quoting Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946)), report and recommendation adopted, id. at 289–301.  The Supreme Court in Anderson v. Mt. Clemens Pottery Co. noted, however, that "[e]mployees

---

[13] Plaintiff's self-created timesheets (ECF No. 29, Ex. A) are revised timesheets submitted after the Court pointed out several discrepancies in plaintiff's original timesheets (ECF No.16-1) during the supplemental inquest hearing.  (See Hr'g Tr at 17:19–25, 18:1–16).  Plaintiff's revised timesheets were served on defendants on July 12, 2024.  (See ECF No. 30).

seldom keep . . . records [of hours worked] themselves; even if they do, the records may be and frequently are untrustworthy." 328 U.S. at 687. By defaulting, defendants have "deprived the plaintiff of the necessary employee records required by the FLSA, thus hampering plaintiff's ability to prove his damages." Santillan v. Henao, 822 F. Supp. 2d at 294. "[A]n employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." Id. (quoting Anderson v. Mt. Clemens Pottery Co., 328 U.S. at 687).

In light of the holding in Anderson, courts in this Circuit have held that where a defendant-employer defaults, a plaintiff may meet his burden of proof "by relying on his recollection alone." Doo Nam Yang v. ACBL Corp., 427 F. Supp. 2d 327, 335 (S.D.N.Y. 2005). Otherwise, defendants in FLSA cases would stand to benefit from choosing not to cooperate with discovery or litigation efforts, and "[o]ne should not be permitted to profit by its own wrongful act." Boyke v. Superior Credit Corp., No. 01 CV 290, 2006 WL 3833544, at *5 (N.D.N.Y. Dec. 28, 2006) (citing 29 U.S.C. § 211(c), which requires that employers "make, keep, and preserve . . . records of the persons employed by him and of the wages, hours, and other conditions and practices of employment"); see also Park v. Seoul Broad. Sys. Co., No. 05 CV 8956, 2008 WL 619034, at *7 (S.D.N.Y. Mar. 6, 2008) (explaining that the Supreme Court has held that courts should apply a "special burden-shifting standard" where employers fail to comply with this statutory duty of record keeping (citing Anderson v. Mt. Clemens Pottery Co., 328 U.S. at 687)).

New York law also requires that employers keep various, detailed employment records in their course of business relating to employees' rates of pay, hours, dates of work, and payroll, among other information. See NYLL § 195(1) (requiring an employer to "provide his or her

employees, in writing . . . a notice containing . . . the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other"); NYLL § 195(2) (requiring employers to notify employees in writing of any changes in frequency or rate of payment seven days prior to the change taking effect); NYLL § 195(3) (employers must "furnish each employee with a statement with every payment of wages, listing . . . the dates of work . . . gross wages; deductions; allowances, if any claimed as part of the minimum wage; . . . and net wages"); NYLL § 195(4) (requiring employers to "establish, maintain and preserve for not less than six years contemporaneous, true, and accurate payroll records showing for each week worked the hours worked; the rate or rates of pay and basis thereof, . . . ; gross wages; deductions; . . . and net wages for each employee"). NYLL § 196-a(a) requires that employers who fail to maintain the appropriate records "bear the burden of proving that the complaining employee was paid wages, benefits and wage supplements." See also Padilla v. Manlapaz, 643 F. Supp. 2d 302, 307 (E.D.N.Y. 2009) (explaining in the context of a summary judgment motion that where an employer's records are inadequate and the employee meets her burden of proof, "[t]he burden then shifts to the employer to prove by a preponderance of the evidence that plaintiff was properly paid for the hours worked" (citing NYLL § 196-a(a))).

Thus, under both federal and state laws, defendant-employers have an obligation to keep records, and by virtue of defendants' default, plaintiff's "recollection and estimates of hours worked are presumed to be correct." Liu v. Jen Chu Fashion Corp., No. 00 CV 4221, 2004 WL 33412, at *3 (S.D.N.Y. Jan. 7, 2004) (collecting cases), report and recommendation adopted, (S.D.N.Y. Feb. 26, 2004); see also Guallpa v. N.Y. Pro Signs, No. 11 CV 3133, 2014 WL 2200393, at *3 (S.D.N.Y. May 27, 2014), report and recommendation adopted, 2014 WL 4105948 (S.D.N.Y. Aug. 18, 2014).

However, the Court is not bound to make a determination of damages based solely on plaintiff's declaration and submission as to his hours worked and rates of pay received in the absence of further documentation.  Rather, it is the Court's responsibility to "ensure that there is a reasonable basis for the damages specified in a default judgment," and thus, the Court "has the discretion to require an evidentiary hearing" if it deems necessary.  See Santillan v. Henao, 822 F. Supp. 2d at 290 (citing Chun Jie Yin v. Kim, No. 06 CV 1236, 2008 WL 906736, at *2 (E.D.N.Y. April 1, 2008); see also Leonardo Xum Tambriz et al. v. Taste and Sabor LLC, 577 F. Supp. 3d 314, 322 (S.D.N.Y. 2021) (holding that pursuant to Fed. R. Civ. P. 55(a), "[t]o assess whether the plaintiff has established a sufficient basis for damages, a court has the discretion, but is not required, to hold a hearing").

### 2.    Plaintiff's Testimony

In the instant case, the Court initially questioned whether plaintiff's declaration and submission presented a "reasonable basis" for the damages he requests.  As noted earlier, plaintiff claims that he worked from 8:00 a.m. until 12:00 midnight, or 16 hours per day, 7 days per week, every single day from October 2011 through March 2021.  (Compl. ¶¶ 48, 50; see also Nasir Aff. ¶ 3).  Based on the Motion papers alone, the Court found it difficult to accept that plaintiff never missed a day of work and/or never worked for fewer hours than 16 during the 10 years that he allegedly worked at Khokon Convenience.  This skepticism was compounded by the fact that, because of the staggering number of hours he claims to have worked, plaintiff requests an exceptionally large damages award, $681,181.00, in addition to interest and attorney's fees.  (Pl's Mem. at 16–18; see also Compl. ¶¶ A–M).  Therefore, this Court held a supplemental inquest hearing on June 27, 2024, to determine the credibility of plaintiff's claims for purposes of assessing damages.  (Minute Entry, dated June 27, 2024; see also Hr'g Tr.).

Plaintiff appeared at that hearing via video conference and was visible to the Court throughout his testimony.  (Minute Entry, dated June 27, 2024).  Despite the Court's initial skepticism, the Court now has no reason to doubt plaintiff's credibility or the accuracy of his allegations after observing his testimony during the supplemental inquest hearing.  During that hearing, plaintiff testified to working from 8:00 a.m. through 12:00 a.m. every day during his employment with Mr. Khokon, from October 2011 until March 2021.  (Hr'g Tr. at 8:3–19).  Plaintiff clarified that Khokon Convenience was a two-man convenience store, and that the only other person who worked there besides plaintiff was the store's owner, Mr. Khokon.  (Id. at 12:12–15).  Plaintiff explained that during his employment at Khokon Convenience, Mr. Khokon would arrive at the store when plaintiff's shift ended, at approximately 12:00 a.m., and work the "the night shift" until plaintiff arrived in the morning, at approximately 8:00 a.m.  (Id.)  Plaintiff testified that during his shift, from 8:00 a.m. through 12:00 a.m., he "manage[d] the store" and did "everything" needed to run the store by himself.  (Id. at 8:7–9).

Plaintiff also explained that approximately one to two times per month, he had doctor's appointments that meant he began work one hour later, at 9:00 a.m..  (Id. at 8:20–23).  However, he testified that on those days, Mr. Khokon had plaintiff extend his shift until 1:00 a.m. in order to maintain his 16 hour per day work schedule.  (Id. at 9:17–25).  Plaintiff further testified that during his employment with Mr. Khokon, from October 2011 through March 2021, he never received days off for vacation or holidays.  (Id. at 11:5–6).  He claimed that the only time he could recall missing work were "two days" when he "got very sick" and "was in Coney Island Hospital."  (Id. at 11:4–5).  Plaintiff's testimony with respect to his rate of pay was also consistent with the Motion papers.  He testified that he was paid $500 per week from October 2011 through December 2018, and $650 per week from January 2019 through March 2021.  (Id.

26

at 11:12–14).  He further testified that he was always paid in cash, and he never received any paystubs or W-2 forms.  (Id. at 11:18–24).

Throughout the hearing, plaintiff's testimony was internally consistent, and he was able to quickly and succinctly answer questions from his attorney and the Court.  As noted earlier, plaintiff was visible to the Court for the entirety of his testimony.  Therefore, after observing plaintiff's testimony, the Court finds that Mr. Nasir's claims regarding his ordinary rates of pay and work schedule are credible.

### 3.    Calculating Overtime and Minimum Wage Damages

Plaintiff requests damages under both the FLSA and the NYLL.  (Compl. ¶¶ A–D).  While the defendants' failure to pay minimum and overtime wages violates both the FLSA and the NYLL, a plaintiff may only recover damages under one statute, as "double recovery of the same wages and related damages is not permitted."  Gonzales v. Gran Israel Pre-Sch., No. 12 CV 6304, 2014 WL 1011070, at *11 (E.D.N.Y. Feb. 5, 2014), report and recommendation adopted, id. at *1-2 (E.D.N.Y. Mar. 14, 2014).  Courts will thus award damages under whichever statute would allow for greater recovery.  Id.  In this case, the NYLL provides a greater recovery due to its higher minimum wage and longer statute of limitations, compared to that of the FLSA.

To calculate the amount of damages in unpaid overtime and minimum wages to which plaintiff is entitled, the Court must calculate the total amount that plaintiff should have been paid each week, including both overtime and non-overtime wages, and subtract from it the amount that plaintiff alleged he was paid.

First, to calculate the amount that plaintiff should have been paid for the first 40 hours of the workweek—the hours for which he should have received standard, non-overtime, wages— the Court multiplies the applicable minimum hourly wage according to New York City law for each week in the claim period by 40.  Garcia v. Badyna and Shaggy's Original Cheesesteak, No.

13 CV 4021, 2014 WL 4728287 at *10, (E.D.N.Y. Sept. 23, 2014). Thus, for the period August 7, 2016, when the NYLL minimum wage rate was $9.00 an hour, plaintiff should have received $360 per week for the first 40 hours worked. For the period December 31, 2016, to December 30, 2017, when the NYLL minimum wage rate was $10.50 an hour, plaintiff should have received $420 per week for the first 40 hours worked. From December 31, 2017, to December 30, 2018, the minimum wage rate was $12.50 per hour, so plaintiff should have received $500 per hour for the first 40 hours. From December 31, 2018, until December 30, 2019, the minimum wage rate was $13.50 per hour or $540 per week; the minimum wage rate was then increased to $15.00 per hour, which meant that plaintiff should have received $600 per week for the remainder of his employment. Based on the number of weeks worked, multiplied by the applicable minimum wage rate, plaintiff should have received a total of $122,338 for the first 40 hours worked each week during his employment.

To calculate the proper overtime wage rate that plaintiff should have been paid for all hours over 40 in a week, the Court multiplies the applicable New York City minimum wage by 1.5. To calculate the amount that plaintiff should have been paid in overtime wages each week, the Court determines the number of hours over 40 that plaintiff worked each week and multiplies this number by the applicable overtime wage rate. Garcia v. Badyna and Shaggy's Original Cheesesteak, 2014 WL 4728287 at *11. Given that plaintiff consistently worked 112 hours per week, or 72 hours in overtime, plaintiff should have received $330,312.60 for the hours worked over 40 in a week.

To find the total amount that plaintiff should have been paid each week, the Court adds the amount to which plaintiff was entitled to be paid for the first 40 hours of work each week to

28

the amount which plaintiff was entitled to be paid for his overtime hours of work each week, which totals $452,650.60.

Finally, to calculate the amount in damages to which plaintiff is entitled for each week, the Court subtracts the amount that the plaintiff alleges he was paid from this total amount to which the plaintiff was entitled.  Based on plaintiff's claim that he was paid $500 a week for all hours worked between August 7, 2016, and December 3, 2018, and $650 a week for the remainder of the period until March 28, 2021, he was paid a total of $138,370 during the time he worked for defendants.  Therefore, plaintiff's unpaid wages amount to $314,280.60.  Given the two days that plaintiff missed due to illness, the Court finds that in total, plaintiff is entitled to $313,680.60 in unpaid minimum and overtime wages.[14]  Plaintiff's unpaid wages throughout the claim period breaks down as follows:

| Date Range | Number of Weeks | NYC minimum wage | Amount Owed for Regular Hours per Week | Amount Owed for Overtime Hours per Week | Total Amount Owed per Week | Total Paid per Week | Total Unpaid Wages for Date Range |
|---|---|---|---|---|---|---|---|
| 8/7/16 - 12/30/16 | 20.7 weeks | $9.00 | $360.00 | $972 | $1,332 | $500 | $17,222.40 |
| 12/31/16 - 12/30/17 | 52.1 weeks | $10.50 | $420 | $1,134 | $1,554 | $500 | $54,913.40 |
| 12/31/17 - 12/30/18 | 52.1 weeks | $12.50 | $500 | $1,350 | $1,850 | $500 | $70,335 |
| 12/31/18 - 12/30/19 | 52.1 weeks | $13.50 | $540 | $1,458 | $1,998 | $650 | $70,230.80 |

---

[14] The total amount that the Court recommends differs from plaintiff's calculation of $315,458.00 in unpaid overtime and minimum wages.  (See Pl.'s Mem. at 16; see also ECF No. 29, Ex. A).  This discrepancy is largely due to the fact that plaintiff calculates damages for the week ending on August 7, 2016, which implies that plaintiff's damages began to accrue at the start of that week, on August 1, 2016.  (ECF No. 29, Ex. A).  However, the start of the claim period is August 7, 2016, so the Court calculates damages beginning to accrue on that day.

| 12/31/19 - 3/28/21 | 64.7 weeks | $15.00 | $600 | $1,620 | $2,220 | $650 | $101,579 |
|---|---|---|---|---|---|---|---|
| | | | | | | | $314,280.60 - $600 |
| | | | | | | **TOTAL** | **=$313,680.60**[15] |

### 4.    Calculating Spread of Hours Compensation

To calculate the amount in spread-of-hours compensation to which plaintiff is entitled, the Court must calculate how many days plaintiff worked over ten hours during the claim period. For each day that plaintiff allegedly worked over ten hours, he is entitled to recover an additional hour of compensation calculated at the applicable minimum wage under the NYLL. Garcia v. Badyna and Shaggy's Original Cheesesteak, 2014 WL 4728287 at *13. Plaintiff requests unpaid spread-of-hours premiums beginning on December 31, 2016, through March 28, 2021. (See Compl. ¶ 96; Pl.'s Mem. at 16; see also ECF No. 29, Ex. A). Based on plaintiff's claims that he worked 16 hours per day, 7 days per week, throughout the entire claim period, the spread-of-hours compensation to which plaintiff is entitled breaks down as follows:

---

[15] Given plaintiff's testimony that the only time he could recall missing work were "two days" when he "got very sick" and "was in Coney Island hospital," (Hr'g Tr. at 11:4–5) the Court deducts the amount of pay equal to two days of work from the damages to which plaintiff is entitled. Plaintiff did not specify when, exactly, these two days were, so the Court uses $12.50, the median minimum wage rate during plaintiff's employment with defendant, to calculate the deduction. If plaintiff missed two days of work in one week, he would have worked 16 hours per day, five days per week, or 80 hours per week. Accordingly, he should have been paid $1,250 for that week in regular and overtime wages based on a $12.50 minimum hourly wage. Based on his $500 per week salary, which plaintiff received for the majority of his time working for defendants, plaintiff is entitled to $750 in damages from that week, rather than the $1,350 to which he would have been entitled had he worked seven days that week. Accordingly, the Court subtracts the difference, $600, from the total amount of damages to account for the two days during which plaintiff was sick and missed work.

| Date Range | Number of Days | NYC Minimum Wage | Total Spread-of-Hours Premium Owed |
|---|---|---|---|
| 12/31/16 - 12/30/17 | 365 | $10.50 | $3,832.50 |
| 12/31/17 - 12/30/18 | 364 | $12.50 | $4,550 |
| 12/31/18 - 12/30/19 | 364 | $13.50 | $4,914 |
| 12/31/19 - 12/30/20 | 365 | $15 | $5,475 |
| 12/31/20 - 3/28/21 | 87 | $15 | $1,305 |
| | | **Total** | $20,076.50 - $25.00 =**$20,051.50** [16] |

Accordingly, the Court concludes that plaintiff is entitled to $20,051.50 in spread-of-hours wages.[17]

B.    Liquidated damages

Plaintiff also requests "liquidated damages in an amount equal to the total amount of wages found to be due," pursuant to 29 U.S.C. § 216(b), 260 and NYLL § 663(1).  (Compl. ¶¶ A–D; Pl.'s Mem. at 1).  Under the FLSA, an employer who fails to pay his or her employees the

---

[16] The Court subtracts spread-of-hours compensation for the two days during which plaintiff missed work due to illness.  (Hr'g Tr. at 11:4–5).  The Court uses a $12.50 minimum wage, in accordance with the wage used to calculate the deduction from plaintiff's unpaid wage damages.  (See Footnote 16).

[17] The total amount that the Court recommends differs from the plaintiff's calculation of $20,132.50.  (See Pl.'s Mem. at 16; see also ECF No. 29, Ex. A).  $25 of this $56 difference is due to the fact that plaintiff's calculations did not take into account the two days during which he missed work due to illness.  The additional $31 discrepancy is explained by the fact that plaintiff calculated his spread-of-hours premiums based on the number of weeks in each period, while the Court calculated the premiums based on the number of days in the period.  (ECF No. 29, Ex. A).  For the period between December 31, 2019, and December 30, 2020, the Court calculates that there were 365 days.  However, plaintiff's calculation that there were 52.3 weeks in that period calculates damages for 366 (52.3 x 7) days.  (Id.)  For the period between December 31, 2020, and March 28, 2021, the Court calculates that there were 87 days.  However, plaintiff calculates that there were 12.6 weeks, or 88 days.  (Id.)  Given that spread-of-hours premiums correspond to the number of hours that plaintiff worked in a given day, rather than an entire week, the Court uses the number of days in each period to calculate the damages to which plaintiff is entitled.

minimum wage or overtime compensation required by Sections 206 and 207 is "liable to the . . . employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation . . . and in an additional equal amount as liquidated damages," 29 U.S.C. § 216(b), unless the employer can demonstrate that he or she acted in good faith and had reasonable grounds for believing that the act or omission in proper payment was not a violation of the FLSA, id. § 260.

Similarly, under the NYLL, an employee is entitled to liquidated damages "equal to one hundred percent of the total of such underpayments found to be due," unless the employer proves a good faith basis for believing he or she was in compliance with the law. NYLL § 663(1). The burden of demonstrating good faith is on the employer. Hengjin Sun v. China 1221, Inc., No. 12 CV 7135, 2016 WL 1587242, at *3 (S.D.N.Y. Apr. 19, 2016) (citing Galeana v. Lemongrass on Broadway Corp., 120 F. Supp. 3d 306, 317 (S.D.N.Y. 2014)). The employer's burden of proving good faith "is a difficult one, with double damages being the norm and single damages the exception." Gortat v. Capala Bros., 949 F. Supp. 2d 374, 380 (E.D.N.Y. 2013) (quoting Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 142 (2d Cir. 1999)). "While an award of duplicative liquidated damages under the FLSA and NYLL . . . is prohibited, courts within this Circuit have allowed recovery under the statute that provides the greatest relief." De Jesus v. Sea Crest Diner-Rest., No. 17 CV 275, 2018 WL 3742778, at *10 (E.D.N.Y. May 7, 2018) (internal citation and footnote omitted) (citing Rana v. Islam, 887 F.3d 118, 123 (2d Cir. 2018)), report and recommendation adopted, 2018 WL 6418893 (E.D.N.Y. Dec. 6, 2018).

Here, defendants have defaulted and therefore have not offered any evidence that their inadequate minimum wage and overtime payments were carried out with a good faith belief that their compensation practices were in compliance with either federal or state law. Thus, this

Court finds defendants liable for liquidated damages.  Accordingly, it is respectfully recommended that the plaintiff be awarded liquidated damages under the NYLL[18] a total of $333,732.10 ($313,680.60 in unpaid wages + $20,051.50 in spread-of-hours compensation) in liquidated damages.

     C.    <u>Pre-judgment Interest</u>

Plaintiff also seeks pre-judgment interest.  (Compl. ¶ K; Pl's Mem. at 1).  "In contrast to the FLSA, the NYLL permits the award of both liquidated damages and pre-judgment interest." <u>Fermin v. Las Delicias Peruanas Rest., Inc.</u>, 93 F. Supp. 3d 19, 25 (E.D.N.Y. 2015).  Pre-judgment interest may be rewarded at a rate of nine percent per year.  N.Y.C.P.L.R. § 5004.  In determining pre-judgment interest, "Courts have discretion in choosing a reasonable date from which to calculate" it.  <u>Ladino v. Cordova</u>, No. 21 CV 2449, 2024 WL 968898 at *4 (E.D.N.Y. Feb. 14, 2024), <u>report and recommendation adopted</u>, 2024 WL 967635 (E.D.N.Y. Mar. 6, 2024). In this district, courts most often select a "median date between the earliest ascertainable date the cause of the action existed and the date the action was filed" from which to calculate pre-judgment interest.  <u>Id.</u>  (quoting <u>Gunawan v. Sake Sushi Rest.</u>, 897 F. Supp. 2d 76, 93 (E.D.N.Y. 2012)).

The recommended unpaid minimum wage, overtime wage, and spread-of-hours compensation recoveries available under NYLL are $333,732.10.  The beginning of plaintiff's claim period is August 7, 2016.  (<u>Compl.</u> ¶ 51).  The Complaint was filed on March 20, 2023. There are 2,416 days between these dates.  Half of 2,416 is 1,208, and 1,208 days from August 7,

---

[18] Given that this Court recommends an award of compensatory damages under the NYLL because it allows for a greater recovery in this context than the FLSA, this Court also recommends an award of liquidated damages under the NYLL.

2016, is November 28, 2019.[19]  The total amount, $333,732.10, multiplied by a rate of nine

percent annually results in approximately $30,035.89 per year in interest, or $82.29 per day

based on 365 days per calendar year.  The Court recommends that pre-judgment interest be

awarded by the Clerk of Court in a daily amount of $82.29 from November 28, 2019, until the

final date of the judgment is entered.

      D.     Post-judgment Interest

Plaintiff also seeks post-judgment interest.  (Compl. ¶ K; Pl's Mem. at 1).  Pursuant to 28

U.S.C § 1961, "[i]nterest shall be allowed on any money judgment in a civil case recovered in a

district court" 28 U.S.C § 1961(a).  The Court respectfully recommends that plaintiff is entitled

to such interest until the judgment is paid in full.

      E.     Attorney's Fees and Costs

Plaintiff seeks to recover an award of reasonable attorney's fees and costs pursuant to

applicable provisions of the FLSA and the NYLL.  (See Pl.'s Mem. at 17–18; see also 29 U.S.C.

§ 216(b); NYLL § 663(1)).   In the context of a motion for default judgment in an FLSA action,

courts in this Circuit have assessed fee requests by applying the lodestar method.  See Jemine v.

Dennis, 901 F. Supp. 2d 365, 391–92 (E.D.N.Y. 2012) (collecting cases).  In conducting a

lodestar assessment, "courts must multiply a reasonable number of hours for the case" with a

reasonable hourly rate for the attorney(s) requesting the fee.  Allen v. County of Nassau, No. 22

CV 1572, 2023 WL 4086457, at *5 (E.D.N.Y. June 20, 2023); see also Perdue v. Kenny A. ex

rel. Winn, 559 U.S. 542, 546, 551–52 (2010); Millea v. Metro-North R.R. Co., 658 F.3d 154,

166 (2d Cir. 2011).  What constitutes a "reasonable number of hours" and a "reasonable hourly

---

[19] Plaintiff requests that the Court select a midpoint date of February 13, 2019.  (Pl.'s Mem. at 16).
However, the Court uses the same process to select a midpoint as other courts in the district.  Based on this process,
the Court finds the midpoint between the beginning of plaintiff's claim period and the date at which the complaint
was filed to be November 28, 2019.

rate" will vary from case-to-case and attorney-to-attorney, and courts will often examine both the experience and expertise of the attorney as well as the complexity of the case.  See Allen v. County of Nassau, 2023 WL 4086457, at *5 (collecting cases); Gonzalez v. Scalinatella, Inc., 112 F. Supp. 3d 5, 27–29 (S.D.N.Y. 2015) (noting that in FLSA actions, rates between $150 and $450 per hour may be appropriate depending on the experience of the attorney).  Among the "critical ingredients in determining a reasonable hourly rate" are the "nature of representation and type of work involved in a case."  Jemine v. Dennis, 901 F. Supp. 2d at 392 (internal quotation marks omitted) (quoting Arbor Hill Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d at 184 n.2).  Courts also often "look to the 'rates prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation.'" Jemine v. Dennis, 901 F. Supp. 2d at 392 (quoting Cruz v. Local Union No. 3 of IBEW, 34 F.3d 1148, 1159 (2d Cir. 1994)).

Plaintiff bears the burden of proving the reasonableness of requested fees, "preferably through contemporaneous time records that describe with specificity the nature of the work done, the hours expended, and the dates."  Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d at 94 (citing New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147–48 (2d Cir. 1983)).

In accordance with the requirements set out in New York State Association for Retarded Children, Inc. v. Carey, 711 F.2d 1136 (2d Cir. 1983), plaintiff's counsel has provided a detailed time record of the tasks performed in this case.  (See Boies Decl.,[20] Ex. B[21]).

---

[20] Citations to "Boies Decl." refer to the declaration by Jerry Boies, dated October 25, 2023.  (ECF No. 16).
[21] Exhibit B to the Boies Decl. consists of plaintiff's counsel's time records.  (ECF No. 16-2).

1.   <u>Hourly Rates</u>

Plaintiff's counsel's billing records demonstrate that all work was performed by attorney Jerry Boies.  (<u>Id.</u>)  Mr. Boies has been a licensed attorney "for over ten years" and seeks a rate of $400.00 per hour.  (Boies Decl. ¶¶ 2–3).

To consider the reasonableness of Mr. Boies' attorney's fees, "courts in this Circuit follow the forum rule set forth in <u>Simmons</u>, which instructs the district court to use the prevailing hourly rates in the district where it sits."  <u>Perez Campos v. Quentin Mkt. Corp.</u>, No. 16 CV 05303, at *9 (citing <u>Simmons v. New York City Transit Authority</u>, 575 F.3d 170, 175-6 (2d Cir., 2009).  These rates correspond to approximately "$450 for partners, $300 for associates, and $200 for recent graduates."  <u>Perez Campos v. Quentin Mkt. Corp.</u>, 2018 WL 9945754, at *9 (citing <u>Cuevas v. Ruby Enterprises of New York, Inc.</u>, No. 10 CV 5257, 2013 WL 3057715, at *2 (E.D.N.Y. June 17, 2013)).  Mr. Boies is the sole managing partner at The Boies Law Firm, PLLC, has been practicing employment law for over a decade, and has successfully litigated employment cases in the E.D.N.Y. and New York State Supreme Court.  (Boies Decl. ¶ 2).  The Court therefore finds Mr. Boies' rate of $400.00 an hour to be reasonable and will calculate fees based on this rate.

2.   <u>Hours Expended</u>

To determine the reasonableness of an attorney's fees request, "[t]he Court must make 'a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended.'"  <u>Maldonado v. La Nueva Rampa, Inc.</u>, No. 10 CV 8195, 2012 WL 1669341, at *13 (S.D.N.Y. May 14, 2012) (quoting <u>Lunday v. City of Albany</u>, 42 F.3d 131, 134 (2d Cir. 1994), <u>report and recommendation adopted</u>, (S.D.N.Y. Aug. 9, 2012)).  "The critical inquiry is 'whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.'"  <u>Maldonado v. La Nueva Rampa,</u>

_Inc._, 2012 WL 1669341, at *13 (quoting Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992)).  In this Circuit, judges are required to "use their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of the hours spent. . . in a given case." Cho v. Koam Med. Servs. P.C., 524 F. Supp. 2d 202, 208 (E.D.N.Y. 2007) (quoting Fox Indus., Inc. v. Gurovich, No. 03 CV 5166, 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005)).

As a preliminary matter, this Court finds that counsel's submission of time records sufficiently meets the Second Circuit's requirements, according to which "all applications for attorney's fees [must] be supported by contemporaneous records." Alejo v. Darna Rest., No. 09 CV 5436, 2010 WL 5249383, at *6 (S.D.N.Y. Dec. 17, 2010) (quoting Scott v. City of New York, 626 F.3d 130, 132 (2d Cir. 2010)), report and recommendation adopted as modified, 2011 WL 165413 (S.D.N.Y. Jan. 18, 2011); see also New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d at 1148 (holding that attorneys who apply for court-ordered compensation must document the application with "contemporaneous time records," which should specify, "for each attorney, the date, the hours expended, and the nature of the work done").

Generally, the "high-end amount of hours spent on eases [sic] in a similar procedural posture (_i.e._, a motion for default judgment immediately following the filing of a complaint) is no more than 55 hours total." Maldonado v. La Nueva Rampa, Inc., 2012 WL 1669341, at *14 (collecting cases from the Second Circuit in which courts approved the number of hours spent on default judgment cases in similar "wage-and-hour cases" as requested if less than 55, and reduced the number of hours, if greater).  Mr. Boies submitted records demonstrating that he has worked 29.4 hours on this matter and thus requests $11,660.00 based on his hourly fee of

$400.00.  (Boies Decl., Ex. B).  The Court finds the 29 hours requested by plaintiff's counsel in this case to be reasonable.

        3.    <u>Costs</u>

Mr. Boies requests an additional $677.00 for costs, including the $402.00 filing fee and $275.00 service of process.  With respect to costs, the core question is whether plaintiff's counsel seeks reasonable "costs that are tied to 'identifiable, out-of-pocket disbursements.'"  <u>Jemine v. Dennis</u>, 901 F. Supp. 2d at 394 (quoting <u>Moon v. Kwon</u>, No. 99 CV 11810, 2002 WL 31512816, at *30–31 (S.D.N.Y. Nov. 8, 2002)); <u>see also</u> <u>Fisher v. SD Prot. Inc.</u>, 948 F.3d 593, 600 (2d Cir. 2020) (stating that courts typically award "those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients").  Mr. Boies submitted invoices providing evidence of his requested costs.  (Boies Decl., Ex. C).  The Court therefore finds the requested costs for service and filing fees are reasonable, and respectfully recommends that plaintiff be awarded $677.00 in costs.

<u>CONCLUSION</u>

In light of the above, the Court respectfully recommends that plaintiff be awarded: (1) $313,680.60 in unpaid minimum wages and overtime pay under the NYLL; (2) $20,051.50 in unpaid spread-of-hours premiums; (3) $333,732.10 in liquidated damages; (4) $82.29 per day in pre-judgment interest, starting on November 28, 2019, until the final date of the judgment is entered; (5) post-judgment interest until the judgment is paid in full; and (6) $12,337.00 in attorney's fees and costs.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report.  <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); <u>see also</u> Fed. R. Civ. P. 6(a) (providing the method for computing time).  Failure to file objections within the specified time waives the right

to appeal the District Court's order.  See, e.g., Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008).

Plaintiff is directed to promptly serve this Report and Recommendation on the defendants via certified mail, return receipt requested, and file proof of service on the docket immediately thereafter.

**SO ORDERED.**

Dated: Brooklyn, New York
       August 23, 2024

/s/ Cheryl L. Pollak
_____
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York